A01A0642. JACKSON v. THE STATE.
(552 SE2d 546)

Blackburn, Chief Judge.

Pursuant to a plea agreement, Maurice Bruce Jackson pled guilty to three separate counts of entering an automobile, and he agreed to pay restitution on a number of additional counts with which the State consented not to charge him.[1] Following a restitution hearing, the trial court ordered Jackson to pay six of his victims a total of $4,114.87. On appeal, Jackson contends that the State presented evidence regarding only the replacement cost of stolen items rather than their fair market value, as required by law. For the reasons discussed below, we agree and affirm in part, vacate in part, and remand the case for further consideration.

Under OCGA § 17-14-9, "(t)he amount of restitution ordered may be equal to or less than, but not more than, the victim's damages," which are further defined in OCGA § 17-14-2 (2) as "all damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced. . . ." "Thus(,) the sufficiency of evidence to support an order of restitution should be measured by the civil standard of preponderance of the evidence." *Lawrenz v. State.*[2]

*Anderson v. State.*[3]

---

[1] Jackson has not questioned the State's ability to enforce any such agreement, and, as such, we do not consider that issue in this appeal.

[2] *Lawrenz v. State,* 194 Ga. App. 724, 725 (391 SE2d 703) (1990).

[3] *Anderson v. State,* 226 Ga. App. 286 (486 SE2d 410) (1997).

Determination of the amount of damages must be based upon fair market value, which must be determined exactly. *Lovell v. State*[4] (evidence insufficient when amount of restitution determined by approximation). The correct determination for the amount of restitution is the fair market value of the property rather than the replacement cost. See *Sutton v. State*[5] (value assigned to the property for which restitution ordered based upon a consideration of the fair market value of a truck of comparable age and condition). See also *Hoard v. Wiley*[6] (testimony regarding cost price must be coupled with evidence showing condition of item both at time of purchase and at time of loss).

*Gaskin v. State;*[7] *Cardwell v. State.*[8]

Six witnesses testified at the restitution hearing. James Aycock stated that Jackson stole a compact disc (CD) player, a CD case, and 75 CDs from his car. Aycock provided only the replacement value of these items, not their fair market value. Tammy Jester also testified that Jackson stole a CD player from her car. She also provided the court with the cost to replace the CD player, not its fair market value. Roger Pierce stated that Jackson took a CD player and a shotgun from his car. Again, Pierce provided only the replacement value of these items. In addition, Pierce requested restitution for his truck window which was broken during the robbery, and he provided a receipt reflecting the cost of performing the repairs.

David Garcia testified that Jackson stole an amplifier from his car; however, rather than fair market value, he provided only the replacement value for the item. Another victim, Corey Adams stated that Jackson took an entire stereo system from his car, and, like the others, he offered the replacement value of the items, not their fair market value. Finally, Jackson does not contest being ordered to pay restitution to Aycock, Garcia, and Paul Massey for the cost of repairing their car windows which were broken during the robbery.

At the conclusion of this testimony, Jackson challenged the sufficiency of the evidence, pointing out to the trial court that the testimony of the witnesses provided only the replacement cost of the stolen items, not the fair market value. The trial court then agreed with Jackson that discounted values were necessary and stated: "The [trial court] . . . is the trier of fact and . . . can give some considera-

---

[4] *Lovell v. State*, 189 Ga. App. 311, 313 (3) (375 SE2d 658) (1988).
[5] *Sutton v. State*, 190 Ga. App. 56, 57 (1) (378 SE2d 491) (1989).
[6] *Hoard v. Wiley*, 113 Ga. App. 328, 333-334 (2) (147 SE2d 782) (1966).
[7] *Gaskin v. State*, 221 Ga. App. 142, 145 (3) (b) (470 SE2d 531) (1996).
[8] *Cardwell v. State*, 225 Ga. App. 337 (484 SE2d 38) (1997).

tion to what the discount might be on a, for example, CD player which was either a month or two months old that was stolen after it was purchased and also whether or not it was purchased at a sale and the replacement cost would now be higher." Afterward, the trial court, without explanation, set values for each of the stolen items.

With the exception of the noncontested items discussed directly above as well as Pierce's car window for which sufficient evidence was given, no evidence was placed in front of the factfinder in this case regarding the fair market value of these items, the condition of the items, or an appropriate method of discounting the items from their replacement value to their fair market value. Without any such evidence on the record, we cannot say that the State has shouldered its burden of proving the fair market value of the stolen items upon which an order of restitution may be based. *Gaskin*, supra. As such, with the exception of the costs of repairing windows on the cars of Aycock, Pierce, Garcia, and Massey, we must vacate the order of restitution in this case and remand the case for further hearings to determine the fair market value of the stolen property.

The State's argument that there is no way of calculating a fair market value for stolen stereo equipment is without merit and does not alter the law. In essence, the State argues that the only means to discover this value is to canvass pawnshop owners, who do not accept stereo equipment because it is often stolen. At the restitution hearing, the State called no pawnshop owners to support this proposition and failed to produce evidence having probative value of the victims' losses. The value of stolen property can be established by one having knowledge of the age and condition of the subject property and some knowledge, experience, or familiarity of such property.

Here, the State could have produced such a witness, including the victim of the theft, who is familiar with the stolen items and has a fact-supported opinion as to their value. Such proof is routinely required in civil cases.

> Opinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property . . . or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.

*Sisk v. Carney*.[9] Therefore, contrary to the State's argument, it must prove the actual damages of the victims in order to justify restitution.

---

[9] *Sisk v. Carney*, 121 Ga. App. 560, 563 (4) (174 SE2d 456) (1970).

The special concurrence speculates that, in some cases, proof of restitution may not be possible and that the replacement value of stolen property may be the actual amount of a victim's loss. The concurrence further proposes that, in cases such as this, "the trial court should be given the authority to reconsider the sentence and, if appropriate, to allow the defendant to withdraw his plea of guilty." However, as the concurrence itself points out, the remedy provided for in this majority is the one established by case law and statute, and, without question, the amount of damages must be based on fair market value. See *Cardwell,* supra. To adopt the concurrence's proposed remedy would require that this Court overrule a legion of cases and rewrite the statutory authority setting forth the parameters of restitution. In this case, such an action goes beyond the limits of judicial restraint and constitutes inappropriate judicial legislation.

*Judgment affirmed in part, vacated in part and remanded with direction. Pope, P. J., concurs. Mikell, J., concurs specially.*

MIKELL, Judge, concurring specially.

I write separately to mention that one purpose of restitution, in addition to compensating the victim, is to impose punishment on the offender. It could be that, under the circumstances of the case at bar, an adequate and competent proof of the amount of restitution may not be possible. For example, the six citizens who testified at the sentencing hearing may not be willing to return. Moreover, with some kinds of property crimes, it may never be possible to present the required evidence of the fair market value of the damaged or stolen property. In such instances, the trial court may be faced with an affirmed sentence of probation but without restitution in an amount adequate to punish the offender. In such circumstances, the trial court should be given the authority to reconsider the sentence and, if appropriate, to allow the defendant to withdraw his plea of guilty. See Uniform Superior Court Rule 33.10.

The difficulty of proving the damages in restitution cases with the precision required by OCGA § 17-14-2 (2) and the case law is well illustrated by the case at bar. Damages are defined by the cited statute as "all damages which a victim could recover against an offender in a civil action . . . except punitive damages and damages for pain and suffering. . . ." As any practitioner can testify, proof of damages in a civil lawsuit in Georgia can be a highly technical chore requiring careful trial preparation and evidence gathering. To achieve restitution in a criminal case involving property, the state must present competent evidence showing the "fair market value" of the stolen or damaged property at the time of the loss. But in the case at bar, the victims' losses were the replacement value of the stolen items, not their fair market value after use, because, as is ever more common in

our modern consumer society, used items cannot be purchased or can be located only after expenditure of more time and money than would be needed to obtain a new replacement item.

The current statutory scheme is especially inadequate when the items to be replaced are unique. For example, a victim testified on cross-examination as follows regarding the theft of an in-dash compact disc player and 75 CDs:

Q. It was not new anymore; correct?
A. No, sir.
Q. It had been used?
A. Yes.
Q. Have you priced what it would cost you to purchase a used CD player used roughly the same amount on the open market?
A. I'm not aware of any place that sells used car CD players.
Q. Have you priced that or not?
A. I've priced the new one, which is cheaper than the one I bought. The same CD player is cheaper now than it was when I bought it originally.
Q. Then you have not priced a used one then?
A. No, sir. I'm not aware of any place that sells used car CD players.
Q. Have you gone to any pawn shop and looked at their price of used CD players?
A. Yes, sir. I have gone to the pawn shops and they told me they do not deal in car CD players because most of them are stolen.
Q. The 75 CDs you priced at $13.88 each, is that the cost of purchasing them?
A. That's a cost of a new one, yes.
Q. Have you priced what it would cost for 75 of the same CDs used?
A. Sir, I don't think you will find these CDs. They were contemporary Christian CDs and the new Christian punk rock CDs and I'm not aware of anywhere that sells them at all. You get them mostly through the Internet and at concerts and places like this.
Q. So you have not priced what 75 used CDs would cost that are the same type?
A. No, I have not.

Under the current statutes, the state would have to present competent evidence of the fair market value of the victim's Christian CDs. Since the CDs are not readily available for repurchasing, this burden

would be extraordinarily difficult, if not impossible, to meet.

The law governing restitution to victims of crime needs to be uncoupled from the technical requirements of proving damages in civil lawsuits if the courts are to carry out the public policy declared by the legislature: OCGA § 17-14-1. "Declaration of Public Policy. It is declared to be the policy of this state that restitution to their victims by those found guilty of crimes is a primary concern of the criminal justice system." Unless some means can be found to make the rules for proving restitution less hypertechnical, the "primary concern of the criminal justice system" may be frustrated. Indeed, the high difficulty of proof may incline trial courts to eschew ordering probation and restitution and instead to sentence offenders to straight confinement for nonviolent crimes.

The General Assembly should consider revising OCGA §§ 17-14-2 (2) and 17-14-9 to provide that in ordering restitution for damage to, or loss of, property, a court may consider the replacement value or the fair market value or the cost of repairs when determining the amount of a victim's loss. This easing of the burden of proving a victim's loss would not work an injustice to the offender because the amount of restitution to be ordered would still be restrained by the required consideration of the factors specified in OCGA § 17-14-10, including the financial condition of the offender and his dependents and the probable future earning capacity of the offender.

In summary, I agree with the majority that our present statutes and precedents require at least a partial reversal of the restitution order.

DECIDED JULY 16, 2001.

*Grist & Brock, Joel M. Grist, Jr.*, for appellant.
*Howard Z. Simms, District Attorney, Graham A. Thorpe, Myra H. Kline, Assistant District Attorneys*, for appellee.