2005 ND 25

STATE of North Dakota, Plaintiff
and Appellee

v.

Mark Joseph TUPA, Defendant
and Appellant.

State of North Dakota, Plaintiff
and Appellee

v.

Brandon Kok, Defendant
and Appellant.

Nos. 20040106, 20040132.

Supreme Court of North Dakota.

Jan. 24, 2005.

James O. Johnson, State's Attorney, Stanton, ND, for plaintiff and appellee.

Todd A. Schwarz, Bismarck, ND, for defendant and appellant Mark Joseph Tupa.

Loren Cay McCray, Bismarck, ND, for defendant and appellant Brandon Kok.

VANDE WALLE, Chief Justice.

[¶ 1] Mark Tupa and Brandon Kok appealed from restitution orders that directed them each to pay $12,000 in victim compensation stemming from their pleading guilty to felony criminal mischief. Both appeals raise identical issues, whether the trial court abused its discretion in determining the amount of restitution or the defendants' ability to pay restitution. We affirm the restitution orders.

[¶ 2] Tupa and Kok pleaded guilty to felony criminal mischief resulting from their role in the destruction of a rural farmstead owned by Terence Schmidt and the Schmidt family. In addition to Tupa and Kok, two juveniles were involved in the crime. Criminal judgments entered against Tupa and Kok ordered them each to pay 1/4 of an amount to be determined at a restitution hearing. At this restitution hearing, Schmidt testified that damage to his real and personal property, plus a $30 per hour allotment for cleaning costs, totaled $93,275.27. Schmidt went to local businesses to obtain the costs of replacing damaged items and went to a local contractor for an estimate to repair the house. Schmidt, therefore, used replacement values to calculate many of his damages. The defendants presented expert testimony regarding the amount of damage to the real and personal property. These experts testified the real property diminished in value by $15,000, while the Schmidt family's personal property decreased in value by $9,349, for an overall damage total of $24,349. Tupa and Kok were each ordered to pay $12,000 in compensation to the owners of the farmstead, payable at $500 per

month during their 24–month probations. Thus, the district court placed total damages at $48,000.

## I.

[¶3] Under N.D.C.C. § 12.1–32–08(1), courts have the authority to order a criminal defendant to pay restitution. Section 12.1–32–08(1), N.D.C.C., states, in part:

> Before imposing restitution or reparation as a sentence or condition of probation, the court shall hold a hearing on the matter with notice to the prosecuting attorney and to the defendant as to the nature and amount thereof. The court, when sentencing a person adjudged guilty of criminal activities that have resulted in pecuniary damages, in addition to any other sentence it may impose, shall order that the defendant make restitution to the victim or other recipient as determined by the court, unless the court states on the record, based upon the criteria in this subsection, the reason it does not order restitution or orders only partial restitution. In determining whether to order restitution, the court shall take into account:
>
> a. The reasonable damages sustained by the victim or victims of the criminal offense, which damages are limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action. . . .
>
> b. The ability of the defendant to restore the fruits of the criminal action or to pay monetary reparations, or to otherwise take action to restore the victim's property.
>
> c. The likelihood that attaching a condition relating to restitution or reparation will serve a valid rehabilitational purpose in the case of the particular offender considered.

Thus, under N.D.C.C. § 12.1–32–08(1), a restitution hearing is required to be held prior to imposing restitution as a sentence, and this provision is applicable "in situations where the defendant either is found guilty or pleaded guilty to a criminal charge and the amounts or the issues of restitution or reparation are uncertain or are in dispute." *State v. Thorstad,* 261 N.W.2d 899, 901 (N.D.1978). This Court's review of a restitution order is limited to whether the district court acted within the limits set by statute, which is similar to an abuse of discretion standard. *State v. Bingaman,* 2002 ND 210, ¶4, 655 N.W.2d 57; *State v. Kensmoe,* 2001 ND 190, ¶7, 636 N.W.2d 183. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Bingaman,* at ¶4; *Kensmoe,* at ¶7. "[T]he State has the burden in a restitution hearing to prove the amount of restitution by a preponderance of the evidence." *State v. Gill,* 2004 ND 137, ¶7, 681 N.W.2d 832.

[¶4] Tupa and Kok assert the district court abused its discretion in setting the amount of restitution by improperly relying on the victim's damage figures, which were based on replacement values. Replacement cost is defined as the cost of acquiring an asset that is as equally useful or productive as an asset currently held. *Black's Law Dictionary* 349 (7th ed.1999). To avoid giving the victim a windfall, Tupa and Kok believe the district court should have relied upon costs to repair or diminutions in fair market value to calculate restitution. The defense's experts applied these techniques in their calculations.

[¶5] At the restitution hearing, Tupa and Kok presented a number of examples where the district court's reliance on

Schmidt's valuations or replacement costs would have possibly been erroneous. Tupa and Kok uncovered, for instance, that Schmidt claimed over $20,000 in damages to a camper, yet he paid only $4,700 for this item, which had a fair market value of $3,900 at the time it was destroyed. Another item, a deep freeze, only had a dent on its side and was still in working order, but $350 of replacement costs were reported. Tupa and Kok pointed out the victim did not inspect some of the items listed as damaged, though he claimed $1,000 for these miscellaneous items. They emphasized that very few of the items reported as damaged were new. Finally, the defendants noted that Schmidt allocated 193 hours, at $30 per hour, for cleaning his property, despite no specialized labor being required. The defense attorneys, therefore, effectively highlighted many areas where Schmidt's replacement values and claimed expenses were potentially inappropriate.

[¶ 6] The district court judge commented regarding the appropriateness of using replacement costs, as opposed to diminutions in fair market value, to calculate restitution:

> I do not believe [diminution in fair market value] is a correct measure of damaging restitution in a criminal case because I believe victims are entitled to be restored. That doesn't mean that if you have property, carpet that's 12 years old, that they're entitled to have new carpet restored but they are to be restored to the condition that it had been in and in this particular case that would be my decision. I'll allow you to present evidence that would relate to [diminution in fair market value] but a crime victim would be treated differently, I believe, than if you were bringing a tort action.
>
> . . . .

> What I'm saying is I don't think [diminution in fair market value is] a fair measure. I don't think that a crime victim is required then to take diminution in value because they're entitled to be restored and that's my decision with regard to that and you can certainly take exception.
>
> . . . .

> Well, I don't think that a crime victim is somehow required to sell off their possessions at auction price rates, that somehow they don't deserve any more compensation for that and you can continue to take exception with it but—you know, that's fine.

[¶ 7] Despite this unequivocal language, it is apparent the trial judge listened to, and was persuaded by, the defendants' complaints regarding Schmidt's figures. The trial court's restitution award was certainly not the product of a blind reliance on Schmidt's data. Indeed, the trial court did not exclusively rely on the testimony offered by Schmidt or the defense experts in setting restitution. The trial court arrived at its own measure of damages, which was between the values offered by Schmidt and the defense witnesses. *Cf. City of Jamestown v. Leevers Supermarkets,* 552 N.W.2d 365, 375 (N.D. 1996) ("We ordinarily sustain an award of damages [in an eminent domain proceeding] if it is within the range of the evidence presented to the trier of fact."); *City of Devils Lake v. Davis,* 480 N.W.2d 720, 725 (N.D.1992) (same). Implicit in such a calculation is the utilization of multiple measures of damages, designed to make a particular victim whole in the varying and unique aspects of his loss. The trial judge placed restitution at $48,000. This represents a $45,275.27 reduction from Schmidt's replacement-cost figures, which more than covers the specific complaints identified above.

[¶ 8] Examining the restitution statute, the Legislature authorized restitution in an amount that would be commensurate with "reasonable damages," which is to be limited to those "expenses actually incurred as a direct result of the defendant's criminal action." *See* N.D.C.C. § 12.1–32–08(1)(a). Reasonableness in this context cannot be reduced to any one formulation. Given the wide spectrum of factual situations and damages, and mindful of the term "expenses actually incurred," trial courts are vested with a wide degree of discretion in arriving at restitution awards. While diminution in value remains one of the measures of damage, there are situations where replacement costs will be needed to make a criminal victim whole or, stated differently, to reimburse a victim for reasonable expenses "actually incurred." For example, if a person has owned a set of dishes for the previous decade, the fair market value of this item would be very small. However, a victim who has these dishes destroyed will have little choice but to procure replacement dishes, which are presumably not readily, or desirably, found in a secondary market. The same can be said of many personal items, such as clothing or certain home furnishings like sofas, mattresses, or bed sheets. The Schmidt family suffered many such personal losses.

[¶ 9] In other situations, replacement costs will be excessive and diminutions in fair market value or repair costs will be in order. For example, if an item, such as the deep freeze mentioned above, can be cost-effectively repaired or restored, this approach should be favored over awarding replacement value. Further, if an item has a ready and acceptable secondary market, such as exists for automobiles or certain pieces of equipment or machinery, diminution in fair market value may be an adequate measure of the victim's reasonable expenses actually incurred. We refrain from constraining a trial judge's discretion with any universal pronouncement on how to properly arrive at reasonable restitution. Rather, the factual situation at hand must be examined to determine whether the trial judge acted according to reason. Where, as here, an array of losses occur, we will not require the trial court to itemize each intricate, individual calculation. The trial judge's restitution award is within the range of reasonableness and is supported by a preponderance of the evidence, and, therefore, the trial court acted within the confines of the restitution statute and did not abuse its discretion.

[¶ 10] Our holding today is within the spectrum of approaches taken by other states confronted with the issue of calculating criminal restitution. Some states statutorily mandate a precise standard to be used. *See* Cal.Penal Code § 1202.4(f)(3)(A) (replacement cost or, if possible, actual cost to repair); Wis. Stat. § 973.20(2)(b) (replacement cost or repair cost, unless diminution in value is greater); Del.Code Ann. tit. 11, § 224(1) (value means market value or, if not ascertainable, replacement cost). Other states have largely proceeded via case law. *See Vermont v. Curtis*, 140 Vt. 621, 443 A.2d 454, 455 (1982) (measure of damages to an automobile is diminution in fair market value); *Sutton v. Georgia*, 190 Ga.App. 56, 378 S.E.2d 491, 492 (1989) (same); *North Carolina v. Maynard*, 79 N.C.App. 451, 339 S.E.2d 666, 667–68 (1986) (same); *Illinois v. Hamilton*, 198 Ill.App.3d 108, 144 Ill.Dec. 426, 555 N.E.2d 785, 789 (1990) (out-of-pocket losses and expenses should be determined by the fair market value of the property at the time of the crime, but fair market value of destroyed items could be determined by what an insurance company would pay under a policy providing for equal-value replacement); *Arizona v.*

*Ellis,* 172 Ariz. 549, 838 P.2d 1310, 1311–12 (Ct.App.1992) (fair market value of property at time of loss will usually reflect victim's actual loss, but this may not always be the case and a court has wide discretion in setting restitution); *Florida v. Hawthorne,* 573 So.2d 330, 332–33 (Fla.1991) (victim's loss and fair market value of property at time of crime will normally be the same, but situations exist where market value inadequately reflects loss and consideration of depreciation is inequitable). To the extent the defendants rely upon the cases listed above that utilize diminution in fair market value, it is noteworthy that many of these cases involve items, such as automobiles, that possess viable secondary markets, while other of these cases explicitly allow for exceptions to the fair-market-value formulation. Our holding, which allows for the use of replacement costs where appropriate, fits within the range of approaches taken by many of these states. *See also Colorado v. Stafford,* 93 P.3d 572, 575–76 (Colo.Ct.App. 2004) (replacement cost is the proper measure of restitution where victim must or will replace an item that is not readily replaceable in a broad and active market at a fair-market-value cost).

■ [¶ 11] Tupa and Kok also analogize that, because repair costs or diminutions in fair market value are used at civil law to measure damage to property in a tort action, they should be utilized in the criminal restitution context as well. *See* N.D.C.C. § 32–03–09.1. The defense's reliance on this statute is misplaced. A more applicable criminal statute, N.D.C.C. § 32–03–09.2, appears immediately after the civil provision cited by the defense. The civil tort statute, N.D.C.C. § 32–03–09.1, explicitly references repair costs and diminutions in fair market value, but N.D.C.C. § 32–03–09.2, which provides for criminal liability for willful property damage, simply states that "[a]ny person convicted of criminal mischief shall be responsible for the actual damages [caused] to real and personal property." We believe the Legislature chose the broader term "actual damages" because it sought to ensure that criminal victims and courts would have greater flexibility in measuring damages in cases of criminal mischief. Implicitly, this flexibility encompasses use of replacement costs, among other measures, where appropriate.

[¶ 12] Further, there is a fundamental connection between the aim of N.D.C.C. § 32–03–09.2 and N.D.C.C. § 12.1–32–08, the criminal restitution statute. And, specifically, there is a strong correlation between the term "actual damages" in N.D.C.C. § 32–03–09.2 and the requirement that damages be "actually incurred" under the restitution statute. Thus, if replacement costs are applicable in one of these contexts, it seems only reasonable to permit their use in the other context as well. States that do limit restitution awards to the damages recoverable in civil actions seem to do so expressly via statute. *See, e.g., Grace v. Alabama,* 2004 WL 1909333 (Ala.Crim.App.2004) (discussing Ala.Code §§ 15–18–67, 15–18–66, which expressly limit restitution awards to the damages recoverable in a civil action); *Jackson v. Georgia,* 250 Ga.App. 617, 552 S.E.2d 546, 547 (2001) (same limitation under Ga.Code Ann. §§ 17–14–9, 17–14–2(2); *Oregon v. Wilson,* 193 Or.App. 506, 92 P.3d 729, 730 (2004) (same limitation under Or. Rev.Stat. §§ 137.106(1), 137.103(2)). North Dakota does not have such a statute.

### II.

[9] [¶ 13] Tupa and Kok also claim the district court abused its discretion in determining each defendant's ability to pay restitution. As a result, they argue the

$500 monthly payments are excessive. Tupa and Kok contend they are full-time college students with limited financial resources. For example, Tupa testified he would make approximately $300 per month during his probationary period, but he anticipated making considerably more upon completion of his studies. Kok testified he was making $75 per month at the time of the restitution hearing, that he would make $12 per hour during the summer months, and that he would be unemployed during the fall and winter semesters. The defense argues that setting the restitution payments at a high level only places the probationers in a situation where they are likely to fail and threatens the Schmidt family's opportunity to be repaid.

[¶ 14] Section 12.1–32–08(1), N.D.C.C., states that "[t]he court shall fix the amount of restitution or reparation, which may not exceed an amount the defendant can or will be able to pay, and shall fix the manner of performance of any condition or conditions of probation established pursuant to this subsection." The defendant has the burden to raise and prove an inability to pay restitution at both the initial restitution hearing and any subsequent revocation proceedings triggered by the defendant's failure to pay ordered restitution. *State v. Gill,* 2004 ND 137, ¶ 14, 681 N.W.2d 832.

[¶ 15] Essentially, the defendants' argument reduces to the following: The trial court abused its discretion by setting restitution payments at a level that will effectively force the defendants to delay their academic pursuits, which, in turn, threatens the Schmidt family's reimbursement. This argument lacks merit. Although a college education is desirable, it does not take precedence over answering for one's criminal misdeeds. As the district court correctly reasoned, the defendants' future choices are limited by their past actions. Under the restitution statute, a restitution payment can be based on what one "can or will be able to pay," which implies a consideration of future factors. Although the defendants may not currently possess the means to pay $500 per month, they can nonetheless seek gainful employment and begin repayment. We do not believe that delaying college, if that is necessary, will threaten the Schmidt family's award. The defendants possess the ability to successfully meet this obligation much sooner than the end of college. The district court did not abuse its discretion in setting the restitution payments.

[¶ 16] We affirm the restitution orders.

[¶ 17] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., and EVERETT NELS OLSON, S.J., concur.

[¶ 18] The Honorable EVERETT NELS OLSON, S.J., sitting in place of SANDSTROM, J., disqualified.