## A07A2434. HARTSELL v. THE STATE.
(654 SE2d 662)

BLACKBURN, Presiding Judge.

Following a guilty plea on two counts of theft by conversion[1] and a hearing on the restitution to be imposed, Belton Hartsell, Jr., appeals the order of restitution, arguing that (i) the State failed to carry its burden of showing the amount of restitution, (ii) the court awarded too much restitution, and (iii) the court erred in finding the use of funds for corporate expenses could constitute conversion. We hold that the evidence sufficed to sustain the order and the amount of restitution. Accordingly, we affirm.

Hartsell was charged with two counts of theft by conversion arising out of his taking earnest money deposits from two clients (with each of whom he had contracted to construct a residence) and then using those funds for his own use in violation of the agreements. He pled guilty to both counts as charged. The court sentenced him to ten years probation and then held a hearing on the amount of restitution to be imposed pursuant to OCGA § 17-14-1 et seq.

At the restitution hearing, the State showed that in July 2002, Victim No. 1 had given Hartsell a check for $16,874, which represented ten percent of the home's cost and which was to be used to build Victim No. 1's home; Hartsell then deposited the money into his company's bank account (an account he exclusively controlled). Having closed his personal account to avoid garnishment proceedings, Hartsell paid his personal and general corporate expenses from this corporate account, using only $560 for zoning expenses associated with Victim No. 1's property. Because zoning was disapproved in December 2002, Hartsell never broke ground nor expended any money for materials or labor on the home. Nor did Hartsell return any of the money to Victim No. 1, as the money had been spent on Hartsell's personal and company expenses by the time Hartsell left his company in January 2003. The construction company became insolvent.

In December 2002, Victim No. 2 gave Hartsell a check for $36,500 as a ten percent earnest money deposit to be used to build a home for this victim; Hartsell deposited the money into the same corporate account, which account he effectively depleted for personal and corporate expenses by the time he left the company in January 2003. No monies went to pay any expenses on Victim No. 2's home, which another contractor eventually built since Hartsell was not approved

---

[1] OCGA § 16-8-4 (a).

to build homes in the particular neighborhood. Through an agreement with the new contractor, Hartsell arranged for Victim No. 2 to receive an $18,600 credit on the new home.

The court found incredible Hartsell's testimony regarding other efforts and expenditures he made on behalf of the victims. Accordingly, the court ordered restitution to Victim No. 1 in the amount of $16,314 ($16,874 less the $560 in zoning expenses) and restitution to Victim No. 2 in the amount of $17,900 ($36,500 less the $18,600 credit from the new contractor).

Hartsell contends that the State failed to prove the restitution in this case, that the court awarded more restitution than allowed by law, and that the court erred in finding Hartsell's payment of corporate expenses with the victims' money equated to a theft by conversion. We disagree as to all three contentions. Inasmuch as these three contentions are interrelated, we address them as one.

OCGA § 17-14-3 (a) empowered the court to order Hartsell "to make full restitution to any victim." The State bore the burden of proving, by a preponderance of the evidence, "the amount of the loss sustained by a victim as a result of the offense." OCGA § 17-14-7 (b). See *Jackson v. State*.[2] The court was to set off against the final award any amounts of restitution Hartsell had already made to the victims. OCGA § 17-14-6 (a). The final amount of restitution could "not exceed the victim's damages." OCGA § 17-14-9. In determining the amount of restitution, the court was to consider the financial ability of Hartsell to pay (a matter that Hartsell stipulated was not an issue here), the amount of damages, the goal of restitution to the victims and the goal of rehabilitation of Hartsell, any restitution previously made, the period of time during which the restitution order would be in effect, and other factors the court deemed appropriate. OCGA § 17-14-10 (a).

Hartsell argues that the State failed to carry its burden of showing the amount of loss sustained by the victims as a result of the offenses of theft by conversion. Citing OCGA § 16-8-4 (a), which requires for a theft by conversion conviction that the defendant converted the funds "to his own use," he claims that at the restitution hearing, the State had to show what portion of the earnest money deposits were used to pay for Hartsell's personal expenses as opposed to expenses of his corporation.

Hartsell's arguments fail on two fronts. First, he overlooks the impact of his guilty plea. By pleading guilty, he admitted to all the allegations of the two counts (*Wright v. Hall*[3]), waiving any factual

---

[2] *Jackson v. State*, 250 Ga. App. 617 (552 SE2d 546) (2001).
[3] *Wright v. Hall*, 281 Ga. 318, 319 (1) (638 SE2d 270) (2006).

inaccuracies (*Kemp v. Simpson*[4]) and waiving all defenses other than that the accusation charged no crime (*Smith v. Hardrick*[5]). Here, he pled guilty to Count 1, which alleged that he received $16,874 from Victim No. 1 "under an agreement to make a specified application of such funds in that the accused was to construct a new house . . . and *the accused did knowingly convert the funds to the use of the accused* in violation of the agreement. . . ." (Emphasis supplied.) Thus, he had already admitted to the court that he had converted $16,874 to his own use. Indeed, he specifically admitted at the guilty plea hearing that he received "a check for sixteen thousand and some dollars from [Victim No. 1] which was supposed to be applied to construct a new house" and that he instead "converted those funds and didn't use them for the construction."

Similarly, with regard to Count 2, Hartsell pled guilty to the charge that he received $36,500 from Victim No. 2 "under an agreement to make a specified application of such funds in that the accused was to construct a new house . . . and *the accused did knowingly convert the funds to the use of the accused* in violation of the agreement. . . ." (Emphasis supplied.) Once again, Hartsell admitted to the court that he had converted the full $36,500 to his own use. Indeed, he specifically admitted at the guilty plea hearing that he "obtained funds being $36,500 from [Victim No. 2] for the construction of a new house" and that he "converted that money to some other use."

Under this set of circumstances, Hartsell had already conceded much of what the State was required to prove at the restitution hearing. Unlike other guilty plea cases where the value of the converted property is yet to be determined, see, e.g., *Jackson*, supra, 250 Ga. App. at 618-620, here Hartsell admitted to receiving specific amounts of money from the victims and to converting those specific amounts of money to his own use in contravention of the agreements with the victims. The State needed only to account for amounts Hartsell had expended for the victims' benefit or had already repaid to the victims, so that the court could reduce the amount of restitution accordingly. OCGA § 17-14-6 (a). See OCGA § 17-14-9. The State carried its burden.

Second, even if Hartsell had not already admitted to converting the full amount of the funds to his own use, the State showed that Hartsell used the funds, not for the building of the promised homes, but rather to pay either his personal expenses or his company's expenses on unrelated matters. Hartsell's contention that he could only be ordered to recompense the victims for those funds he used for

---

[4] *Kemp v. Simpson*, 278 Ga. 439, 439-440 (603 SE2d 267) (2004).
[5] *Smith v. Hardrick*, 266 Ga. 54, 56 (3) (464 SE2d 198) (1995).

his personal expenses lacks foundation in the law. OCGA § 16-8-4 (a) defines the offense of conversion as a person's knowingly converting the funds "to his own use in violation of the agreement." "His own use" does not refer exclusively to using the funds for unapproved personal expenses; rather, it refers to using the funds for a chosen use other than the purpose specified in the agreement. See *Cox v. State.*[6] Indeed, *Connally v. State*[7] held that using a portion of the funds received from the victim to pay unapproved expenses of a business partnership in which the defendant was involved met the definition of using the funds for the defendant's own use. Cf. *McMahon v. State*[8] (defendant liable for criminal acts carried out as an officer of the corporation he controlled). Hartsell's belated argument that the agreements with the victims allowed him to expend the funds for corporate expenses ignores his guilty pleas and in-court admissions that he expended the full amount of the funds "in violation of the agreement[s]."

Accordingly, we discern no error in the restitution order.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED NOVEMBER 21, 2007.

*Frank C. Winn*, for appellant.

*David McDade, District Attorney, James E. Barker, Janet Newburg, Assistant District Attorneys*, for appellee.

---

[6] *Cox v. State*, 275 Ga. App. 895 (622 SE2d 11) (2005).

[7] *Connally v. State*, 265 Ga. 563, 564 (2) (458 SE2d 336) (1995).

[8] *McMahon v. State*, 258 Ga. App. 512, 515 (1) (574 SE2d 548) (2002).