McEvers, Justice.
[¶1] James Blue II appeals from a criminal judgment after he entered Alford pleas to two counts of terrorizing, seven counts of reckless endangerment, two counts of simple assault on emergency medical personnel, three counts of contact by bodily fluids, unlawful possession of a firearm, interference with a telephone during an emergency call, and attempted murder. We affirm the district court's criminal judgment in part, reverse in part, and remand for a consideration of the defendant's ability to pay restitution.
I
[¶2] The State charged Blue with two counts of terrorizing, seven counts of reckless endangerment, two counts of simple assault on emergency medical personnel, four counts of contact by bodily fluids (one count was later dismissed), unlawful possession of a firearm, interference with a telephone during an emergency call, and attempted murder. In October 2017, Blue entered Alford pleas to each charge. Blue agreed with the factual basis the State presented for each charge. During the change of plea hearing, the State provided the following facts. On December 8, 2016, the Minot Police Department was dispatched to the emergency room at Trinity Hospital to meet with an assault victim. The victim initially refused to provide information to the police. She told an investigator that she had been involved with her assailant for approximately two months. She said the two argued and he pushed her over a kitchen counter backwards, strangled her twice, and hit her in the face, first with an open hand and then with a closed fist. The victim indicated he strangled her a third time, resulting in her loss of consciousness. When she regained consciousness, she found herself on the floor vomiting and spitting blood. The officer observed the victim had scratches on her neck, cuts on her lip, and her face appeared swollen and red. The victim's friend, who had driven her to the hospital, identified the victim's boyfriend as James Blue.
*125 [¶3] The State continued with the factual basis that on January 17, 2017, the victim called the police, stating Blue was in her home and she wanted him removed. During the call, the victim yelled, "Don't shoot me." Police officers responded. While officers were en route, another caller reported hearing gunshots coming from the victim's residence. A third caller reported a man shooting a handgun outside of the victim's residence.
[¶4] Blue left the residence walking into the roadway with his handgun drawn. He stopped and fired multiple times back toward the direction of the residence. He pointed his firearm at the officers multiple times. Blue returned to the residence, broke out windows and damaged other property inside. Officers took Blue into custody.
[¶5] Blue was bleeding from an injury to his hand. He was combative with officers trying to restrain him. An officer had an open cut on her hand, and Blue's blood and saliva came in contact with the cut. Ambulance personnel arrived to render aid to Blue. Blue spit at the officers, with saliva landing on an officer's cheek and chest. While ambulance personnel attempted to render aid to Blue, he grabbed both of their arms or wrists at different points, applying enough force for both of them to sustain injury. While Blue was being transported to Trinity Hospital, he spit at officers and the ambulance personnel, and saliva landed on their face, eye, and mouth.
[¶6] The victim reported she heard Blue coming down the hall to the bedroom where she was hiding, and he fired shots toward the master bedroom. Blue then returned to the living room, where he put a gun to the victim's forehead. The victim let her child go and thought he ran out of the residence, and she ran outside with Blue firing his gun at her. Once outside, she realized her child was still in the residence, so she went back to retrieve her child while Blue continued to fire the gun at her.
[¶7] When the victim arrived home the prior evening, Blue was waiting for her. He was intoxicated and became angry. She attempted to call 911, and Blue knocked the phone out of her hand. The victim went to the back bedroom and Blue pointed a pistol in her face and threatened to shoot her and her child. Blue again pointed the pistol at her forehead and said, "Do you think I'm playing, bitch?" The victim stated he held the gun at a downward angle between her eyes and said he would shoot her in the head and through her spine. Blue began to leave, but returned, again putting the gun to her head and threatening to shoot her in front of her child. He finally left the residence.
[¶8] Blue's criminal history included a felony conviction from 2010, making it illegal for him to possess a firearm.
[¶9] After he entered his pleas, the State requested restitution in the amount of $2,716.13. The requested restitution represented the cost of disposing of the destroyed residence, reimbursement to Workers' Compensation (or the equivalent), and reimbursement to Medicaid for various medical expenses. The district court asked Blue if he wanted a restitution hearing or if he wanted to stipulate to the amount. Blue indicated he would stipulate to the restitution and the court found Blue was making a knowing and intelligent decision to stipulate to restitution in the amount of $2,716.13.
[¶10] Blue argued that even though he stipulated to the restitution, the district court still needed to make a factual finding that he is able to pay restitution. The court indicated that statutorily that was true, but under N.D. Const. art. I, § 25 (1)(n) victims have the right to full restitution.
*126 Blue did not argue for a reduction of the restitution; rather, he only argued the court needed to make a factual finding that he is able to pay the restitution.
[¶11] Blue submitted multiple cases to the district court and argued the cases presented were similar to the case at bar. Blue presented four cases to the court, arguing the sentences were disproportionate to what the State was asking for in his case.
[¶12] Blue argued his sentence should be consistent with the submitted cases. The district court sentenced Blue to 20 years imprisonment, with five years suspended on the class A felony, and five years on each of the class C felonies. All sentences were ordered to run concurrently, except two class C felonies, which were ordered to run concurrently with each other, but consecutively to the other sentences. The court imposed conditions of supervised probation including the following conditions: "10. The Defendant will pay restitution as set forth in the most recent judgment entered in this matter.... 32. The Defendant will pay all fines, fees and restitution as ordered by the Court, or in accordance with a payment plan devised by the Defendant's probation officer."
II
[¶13] Blue argues the district court abused its discretion in ordering restitution without considering his ability to pay.
When reviewing a restitution order, we look to whether the district court acted "within the limits set by statute," which is a standard similar to our abuse of discretion standard. "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.
State v. Carson , 2017 ND 196, ¶ 5, 900 N.W.2d 41 (citation omitted). It is a defendant's burden to raise and prove an inability to pay restitution. State v. Bruce , 2018 ND 45, ¶ 16, 907 N.W.2d 773 (relying on State v. Tupa , 2005 ND 25, 691 N.W.2d 579 ). Even if a defendant has no current ability to pay due to imprisonment, a defendant may have an ability to pay based on the possibility of future gainful employment. Id. We review questions of law de novo in determining whether or not the district court abused its discretion through misapplication or misinterpretation of the law. State v. Kostelecky , 2018 ND 12, ¶ 6, 906 N.W.2d 77.
[¶14] Blue does not contest the amount of restitution ordered, but argues the district court erred by failing to make findings on his ability to pay the restitution ordered. The court informed Blue that he had the right to request a hearing on restitution to determine whether the amounts were validly stated and whether the amounts were directly attributable to the criminal actions he was charged with. The court further stated "[y]ou can have a hearing on those two issues or you can stipulate and say you agree to this." Blue then stated "I'll take the 27-." The court replied, "[a]ll right. Court will find that Mr. Blue is making a knowing and intelligent decision to stipulate to restitution in the amount of $2,716."
[¶15] Blue argued that even though he stipulated to the restitution, the district court still needed to make a factual finding he is able to pay restitution. The court then stated, "You know, statutorily, that's true, although under Marsy's Law, constitutionally, it is no more because under Marsy's Law, the-I can't remember what paragraph it is, but under Marsy's Law, it says that individuals and entities who are *127 harmed by criminal activity have the right to full restitution."
[¶16] Relying on State v. Thorstad , 261 N.W.2d 899, 901 (N.D. 1978), the State argues that the defendant agreed to restitution as part of an open plea and is not entitled to a hearing to determine whether he has the ability to pay restitution. Unlike Thorstad , where the defendant did not raise inability to pay at sentencing, but rather at a hearing revoking his probation, Blue raised the issue prior to sentencing. We agree with the State that a separate hearing need not be held when the defendant stipulates to the nature and amount of restitution. However, whether a separate hearing is held does not relieve the district court of its obligation to consider the factors set forth under N.D.C.C. § 12.1-08-32, when raised by the defendant.
[¶17] Blue argued the district court should analyze his ability to pay the stipulated restitution. The court sua sponte refused to address factors found under N.D.C.C. § 12.1-32-08(1)(b), deeming it unnecessary under N.D. Const. art. I, § 25 (1)(n). In effect, the court ruled N.D.C.C. § 12.1-32-08(1)(b) is in violation of N.D. Const. art. I, § 25 (1)(n).
[¶18] In State v. Hansen , 2006 ND 139, ¶¶ 10-12, 717 N.W.2d 541, this Court vacated a district court order declaring a statute unconstitutional when the court raised the issue on its own initiative without giving notice to the attorney general and without the benefit of briefing by the State. We stated in Hansen :
Our procedure for constitutional adjudication requires deliberate and reasoned review of statutes, which requires that constitutional claims be properly raised. See Riemers v. Omdahl , 2004 ND 188, ¶ 19, 687 N.W.2d 445 (requiring citation to relevant authority for constitutional claims). For example, in [State v. ] Hanson , 558 N.W.2d [611,] 611-12 [ (N.D. 1996) ], the defendant made a constitutional challenge to a statutory provision granting prosecutors reciprocal discovery and thereafter the district court ruled the statutory provision violated the separation-of-powers doctrine.
Our jurisprudence for deciding constitutional issues requires an orderly process for the development of constitutional claims, which, unlike in Hanson , was not followed in this case. Rather, the district court raised the issue without briefing by any party and without notice to the attorney general. Defense counsel did raise the issue but only after embracing the court's invitation to do so. Although the court indicated the State could ask for a bail review, the court nevertheless expressed its initial inclination that the statutory requirement for random drug testing was unconstitutional and issued a lengthy written opinion on the same day. Unfortunately the procedure employed by the district court not only leaves the impression that the issue was going to be decided whether or not raised by the parties but that the decision was predetermined. This procedure is not conducive to reasoned decision making....
Because the district court failed to follow established procedures and orderly process in this case and in recognition of the concern we expressed in Hanson , 558 N.W.2d at 612, about one district court judge having the final say on the constitutionality of a statute, we exercise our supervisory jurisdiction to vacate the court's order determining that the requirement for random drug testing as a condition of bail in N.D.C.C. § 19-03.1-46 is unconstitutional.
Id. at ¶¶ 10-12.
[¶19] Rather than ruling on an issue not raised or briefed by the parties, *128 the district court should have presumed the constitutionality of a statute until it is clearly shown otherwise. Kessler v. Thompson , 75 N.W.2d 172, 178 (N.D. 1956). "A statute will, if possible, be so construed as to render it valid." Id. (citations omitted). "Courts should not declare a statute void unless its invalidity is, in the court's judgment, beyond reasonable doubt." Id. (citation omitted).
[¶20] Section 12.1-32-08(1), N.D.C.C., provides, in pertinent part:
Before imposing restitution or reparation as a sentence or condition of probation, the court shall hold a hearing on the matter with notice to the prosecuting attorney and to the defendant as to the nature and amount of restitution. The court, when sentencing a person adjudged guilty of criminal activities that have resulted in pecuniary damages, in addition to any other sentence the court may impose, shall order that the defendant make restitution to the victim or other recipient as determined by the court, unless the court states on the record, based upon the criteria in this subsection, the reason it does not order restitution or orders only partial restitution.... In determining whether to order restitution, the court shall take into account:
a. The reasonable damages sustained by the victim or victims of the criminal offense, which damages are limited to those directly related to the criminal offense and expenses actually incurred as a direct result of the defendant's criminal action. This can include an amount equal to the cost of necessary and related professional services and devices relating to the physical, psychiatric, and psychological care....
b. The ability of the defendant to restore the fruits of the criminal action or to pay monetary reparations, or to otherwise take action to restore the victim's property.
....
The court shall fix the amount of restitution or reparation, which may not exceed an amount the defendant can or will be able to pay, and shall fix the manner of performance of any condition or conditions of probation established pursuant to this subsection. The court shall order restitution be paid to the division of adult services for any benefits the division has paid or may pay under chapter 54-23.4 unless the court, on the record, directs otherwise. Any payments made pursuant to the order must be deducted from damages awarded in a civil action arising from the same incident. An order that a defendant make restitution or reparation as a sentence or condition of probation may, unless the court directs otherwise, be filed, transcribed, and enforced by the person entitled to the restitution or reparation or by the division of adult services in the same manner as civil judgments rendered by the courts of this state may be enforced.
[¶21] Because Blue's sentence contained conditions of supervised probation, we also need to consider N.D.C.C. § 12.1-32-07(4), which provides:
When imposing a sentence to probation, probation in conjunction with imprisonment, or probation in conjunction with suspended execution or deferred imposition of sentence, the court may impose such conditions as it deems appropriate and may include any one or more of the following:
....
e. Make restitution or reparation to the victim of the defendant's conduct for the damage or injury which was sustained or perform other reasonable assigned work. When restitution, *129 reparation, or assigned work is a condition of probation, the court shall proceed as provided in subsection 1 or 2, as applicable, of section 12.1-32-08.
[¶22] Article I, § 25(1)(n), N.D. Const., provides victims "[t]he right to full and timely restitution in every case and from each offender for all losses suffered by the victim as a result of the criminal or delinquent conduct." In Kostelecky , we stated, " N.D. Const. art. I, § 25 (1)(n) does not change the restitution that a district court may order under N.D.C.C. §§ 32-03-09.2 and 12.1-32-08." 2018 ND 12, ¶ 12, 906 N.W.2d 77. However, we did not determine whether N.D. Const. art. I, § 25 (1)(n) eliminates the need for a district court to consider a defendant's ability to pay under N.D.C.C. § 12.1-32-08(1)(b). Id. at ¶ 17.
"Principles of construction applicable to statutes are generally available to construction of the Constitution." In Kelsh v. Jaeger , 2002 ND 53, ¶ 7, 641 N.W.2d 100, we outlined several principles for construing constitutional provisions:
When interpreting the state constitution, our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement. The intent and purpose of a constitutional provision is to be determined, if possible, from the language itself. We give words in a constitutional provision their plain, ordinary, and commonly understood meaning. When interpreting constitutional provisions, we apply general principles of statutory construction. We must give effect and meaning to every provision and reconcile, if possible, apparently inconsistent provisions. We presume the people do not intend absurd or ludicrous results in adopting constitutional provisions, and we therefore construe such provisions to avoid those results.
Thompson v. Jaeger , 2010 ND 174, ¶ 7, 788 N.W.2d 586 (citations omitted).
[¶23] Courts must give the most careful consideration to questions involving the interpretation of the Constitution, and approach constitutional questions with great deliberation and the greatest possible caution, and even reluctance, and should never declare a statute void unless its invalidity is, in their judgment, beyond a reasonable doubt. State v. Miller , 129 N.W.2d 356, 361 (N.D. 1964) (citations omitted). "The only test of the validity of an act regularly passed by a state Legislature is whether it violates any of the express or implied restrictions of the state or federal Constitution." Id.
"These rules are peculiarly applicable in this state, where it is provided by the Constitution 'that in no case shall any legislative enactment or law of the state of North Dakota be declared unconstitutional' unless four of the five judges of the Supreme Court shall so decide. N.D. Const. art. 25, Amendments.
"In considering whether the Legislature transcended its constitutional powers in the enactment of a statute it is also well to bear in mind the fundamental difference between the Constitution of the United States and the Constitution of the state of North Dakota, as regards the legislative powers which may be exercised under them. Cooley (Cooley, Const.Lim. [7th Ed.] 242) said:
" 'We look in the Constitution of the United States for grants of legislative power, but in the Constitution of the state to ascertain if any limitations have been imposed upon the complete power with which the legislative department of the state was vested in its creation. Congress can pass no laws but such as the Constitution authorizes, *130 either expressly or by clear implication; while the state Legislature has jurisdiction of all subjects on which its legislation is not prohibited. The law-making power of the state, it is said in one case, recognizes no restraints, and is bound by none except such as are imposed by the Constitution. That instrument has been aptly termed a legislative act by the people themselves in their sovereign capacity, and is therefore the paramount law. Its object is not to grant legislative power, but to confine and restrain it. Without the constitutional limitations the power to make laws would be absolute. These limitations are created and imposed by express words or arise by necessary implication.'
"* * * Under the Constitution of this state 'all governmental sovereign power is vested in the Legislature, except such as is granted to the other departments of the government, or expressly withheld from the Legislature by constitutional restrictions.' "
Id. at 361-62 (citations omitted).
[¶24] We agree with the district court that the constitutional provision would prevail over the statute, but only if the two cannot be reconciled. The court did not attempt to harmonize N.D.C.C. § 12.1-32-08(1)(b) with N.D. Const. art. I, § 25 (1)(n). The court did not declare N.D.C.C. § 12.1-32-08(1)(b) unconstitutional beyond a reasonable doubt; rather, when discussing the issue, the court said, "And I may be wrong, and-I invite the argument at a higher level."
[¶25] Under N.D. Const. art. I, § 25 (1)(n), a victim is entitled to full and timely restitution. Under Kostelecky , this Court has stated the meaning of full restitution has not changed. Kostelecky , 2018 ND 12, ¶ 12, 906 N.W.2d 77. Other than requiring restitution be timely made, the constitutional provision has no express or implied restrictions on how restitution is to be made. Considering whether a defendant has the ability to pay in no way violates any express or implied restriction under N.D. Const. art. I, § 25 (1)(n). It is unnecessary to consider the constitutional provision if a defendant has the ability to pay. Bruce , 2018 ND 45, ¶ 17, 907 N.W.2d 773. In Bruce , we affirmed the district court judgment requiring the defendant to pay $7,157.20 in restitution when the defendant had no assets and was facing imprisonment followed by supervised probation. Id. The district court in Bruce looked at the defendant's ability to pay when he is released and on supervised probation. Id. While it is unlikely Blue will be able to show an inability to pay based on the amount of restitution here, he should have been given the opportunity to address the court. Considering a defendant's ability to pay has implications as to whether a defendant is able to comply with his conditions of probation. Here, the court ordered Blue to pay restitution as a condition of probation without considering whether he had the ability to pay.
[¶26] "Unless or until the district court concludes a defendant will be unable to pay full restitution during his period of incarceration and probation, there is no need to address portions of the statute that may be in conflict with N.D. Const. art. I, § 25 (1)(n). We conclude that the district court abused its discretion by failing to consider N.D.C.C. § 12.1-32-08(1)(b) when ordering restitution.
III
[¶27] Blue also argues the district court's sentence violates the Eighth Amendment's requirement of proportionality. This Court reviews alleged violations of constitutional rights, including the prohibition against cruel and unusual punishment, *131 de novo. See State v. Sorenson , 2009 ND 147, ¶ 16, 770 N.W.2d 701.
The Eighth Amendment prohibits cruel and unusual punishments. A punishment in a non-capital case that is grossly disproportionate to the offense is cruel and unusual. Successful Eighth Amendment challenges to the proportionality of a sentence in non-capital cases are exceedingly rare, and courts have held sentences were grossly disproportionate only in extreme cases. The Eighth Amendment "contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' "
When a claim of disproportionality is made, the court first compares the gravity of the offense to the harshness of the penalty. If the court finds a gross disproportionality exists, then the court should compare the defendant's sentence with sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions. To evaluate the gravity of the offense, we consider the actual or threatened harm to the victim and society and the defendant's culpability and degree of involvement.
State v. Gomez , 2011 ND 29, ¶¶ 25-26, 793 N.W.2d 451 (citations omitted).
[¶28] The district court is allowed the widest range of discretion in criminal sentencing. State v. McClean , 1998 ND 21, ¶ 4, 575 N.W.2d 200. On appeal, this Court has no power to review the sentencing court's discretion in fixing a term of imprisonment within the range authorized by statute. Id. "Appellate review of a criminal sentence is generally confined to whether the [district] court acted within the sentencing limits prescribed by statute, or substantially relied upon an impermissible factor." Id. (citing State v. Magnuson , 1997 ND 228, ¶ 23, 571 N.W.2d 642 ). Generally, a sentence within the statutory sentencing range is neither excessive nor cruel. Gomez , 2011 ND 29, ¶ 28, 793 N.W.2d 451.
[¶29] For a class A felony, a maximum penalty of twenty years' imprisonment is authorized by statute. N.D.C.C. § 12.1-32-01(2). For a class C felony, the maximum penalty of five years' imprisonment is authorized by statute. N.D.C.C. § 12.1-32-01(4).
[¶30] Here, Blue pled guilty to 16 class C felonies and one class A felony. The district court discussed the sentencing factors set forth in N.D.C.C. § 12.1-32-04. The court then sentenced Blue to 20 years, with five years suspended, on the class A felony. The court sentenced Blue to five years each on the class C felonies, with all but two to be concurrent with the class A felony sentence. The remaining two class C felonies were ordered to be concurrent with each other, but consecutive to the other counts. This resulted in a total requirement that Blue serve 20 years of imprisonment.
[¶31] The first case Blue presented a defendant charged with attempted murder. The facts indicated the defendant fired shots into a home where individuals resided. The defendant pled guilty to reckless endangerment, the attempted murder charge was dismissed, and the defendant was sentenced to four years with two years suspended. The second case involved a defendant charged with attempted murder after her husband suffered eight stab wounds. The jury convicted the defendant and she was sentenced to 20 years with five years suspended, and five years of supervised probation. The third case involved a defendant who pled guilty to attempted murder. Facts indicated the defendant shot the victim in the face with a *132 shot gun, severing his tongue and shattering his jaw. The defendant was sentenced to 20 years with ten years suspended, and five years of supervised probation. Lastly, Blue presented a case where the defendant was charged with conspiracy to commit murder and attempted murder. The defendant was part of a gang that shot the victim in the neck, severing his esophagus. The defendant pled guilty to conspiracy to commit murder and the attempted murder charge was dismissed. The defendant was sentenced to nine years imprisonment. Blue argues his sentence is disproportionate to other defendants because he received more time than other defendants who have committed the same crime and he was sentenced similar to defendants who caused far greater injury to the victim. However, the cases Blue provided are distinguishable. First, each case Blue provided deals with a defendant with one or two charges. Blue pled guilty to 17 felony charges. The number of charges involved, Blue's criminal history, and differences in the factual circumstances distinguish Blue's case and the cases he relies on.
[¶32] Blue's sentence was within the statutory guidelines and was not disproportionate to the crime or to other sentences received by other offenders. Therefore, Blue's sentence did not violate the Eighth Amendment's requirement of proportionality.
IV
[¶33] We affirm the district court's criminal judgment in part, reverse in part, and remand for a consideration of the defendant's ability to pay restitution.
[¶34] Lisa Fair McEvers
Daniel J. Crothers
Gerald W. VandeWalle, C.J.
Jensen, Justice, concurring and dissenting.
[¶35] I concur with the majority opinion's conclusion the district court's sentence does not violate the Eighth Amendment's requirement of proportionality. Because N.D. Const. art. I, § 25 (1)(n) grants to the victim of a crime the right to "full and timely" restitution for "all losses" and the defendant is only seeking modification of the amount of restitution, I dissent from the majority's remand of this case to the district court for consideration of the defendant's ability to pay. I would affirm the district court's judgment.
[¶36] Blue entered a plea of guilty to multiple charges. At the sentencing hearing, the district court informed Blue he had the right to request a hearing on restitution to determine whether the amounts were validly stated and whether the amounts were directly attributable to his criminal actions. The court also informed Blue he could stipulate to the amount of restitution. Blue responded, "I'll take the 27-." The court interpreted Blue's response as a stipulation regarding the amount of restitution and found "that Mr. Blue is making a knowing and intelligent decision to stipulate to restitution in the amount of $2,716."
[¶37] Immediately following Blue's stipulation to the amount of the restitution, his attorney stated the district court still needed to make a factual finding that Blue is able to pay restitution. The court responded as follows:
You know, statutorily, that's true, although under Marsy's Law, constitutionally, it is not more because under Marsy's Law, the-I can't remember what paragraph it is, but under Marsy's Law, it says that individuals and entities who are harmed by criminal activity have the right to full restitution.
*133 ....
All right. Subsection (n) of section (1)-subsection (1) of Section 25 of the North Dakota Constitution, Article I, Section 25. Subsection (n) provides the right to full and timely restitution in every case from each offender for all losses suffered by the victim as a result of the criminal conduct. That's what it says, so giving that language its plain meaning, full and timely, which is subject to some interpretation, but "full," definitely not. So there's a constitutional right to a victim to be fully made whole.
[¶38] In determining whether or not Blue's ability to pay was required to be considered, the district court considered the interplay between the restitution procedure established by the legislature in N.D.C.C. § 12.1-32-08(1) and the victim's right to be fully compensated for all losses established by N.D. Const. art. I, § 25 (1)(n). Blue argues the district court abused its discretion in determining the victim's constitutional right to "full" restitution of "all losses" eliminated the statutory requirement to consider his ability to pay in determining the amount of restitution.
[¶39] When reviewing a restitution order, we look to whether the district court acted "within the limits set by statute," which is a standard similar to our abuse of discretion standard. State v. Kostelecky , 2018 ND 12, ¶ 6, 906 N.W.2d 77 (quoting State v. Tupa , 2005 ND 25, ¶ 3, 691 N.W.2d 579 ). "A district court abuses its discretion only if it acts in an arbitrary, unreasonable or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." Rogers v. State , 2017 ND 271, ¶ 11, 903 N.W.2d 730.
[¶40] Whether or not the district court properly determined N.D. Const. art. I, § 25 (1)(n) eliminates the consideration of whether or not the defendant has the ability to pay pursuant to N.D.C.C. § 12.1-32-08(1), is a question of law. "We review questions of law de novo in determining whether or not the district court abused its discretion through misapplication or misinterpretation of the law." Kostelecky , 2018 ND 12, ¶ 6, 906 N.W.2d 77.
[¶41] Section 12.1-32-08(1), N.D.C.C., provides, in part, as follows: "The court shall fix the amount of restitution or reparation, which may not exceed an amount the defendant can or will be able to pay." Article I, § 25(1)(n), N.D. Const., provides, in part, every crime victim has the right, "to full and timely restitution in every case and from each offender for all losses suffered by the victim as a result of the criminal or delinquent conduct."
[¶42] This Court has noted, "[i]n construing constitutional provisions, we apply general principles of statutory construction. In construing statutory and constitutional provisions, we will attempt to give meaning to every word, phrase, and sentence, and, if necessary, we will attempt to reconcile and harmonize potentially conflicting provisions." Kostelecky , 2018 ND 12, ¶ 8, 906 N.W.2d 77 (quoting State Bd. of Univ. & Sch. Lands v. City of Sherwood , 489 N.W.2d 584, 587 (N.D. 1992) ). "If no ambiguities exist, we look to the plain language of statutes to ascertain their meanings." Kostelecky , at ¶ 8.
[¶43] The amount of compensation to which the victim of a criminal act is entitled as a constitutional right as provided by N.D. Const. art. I, § 25 (1)(n) is not ambiguous. The North Dakota Constitution provides a victim has "[t]he right to full and timely restitution in every case and from each offender for all losses suffered by the victim as a result of the criminal or delinquent conduct." The word "full" and the phrase "all losses" in no *134 manner implies an amount to be reduced to something less after consideration of the defendant's ability to pay. To construe the use of the word "restitution" within the constitutional provision as the amount of restitution determined under N.D.C.C. § 12.1-32-08(1) and allowing for the amount of constitutionally mandated restitution to be reduced by the defendant's ability to pay, would render the phrase "all losses" meaningless; this is an unreasonable interpretation.
[¶44] This case is an appeal from the judgment that has initially imposed the amount of restitution. Consideration of the defendant's ability to pay may be appropriate in a subsequent probation revocation proceeding with regard to an allegation the defendant has willfully failed to pay the ordered restitution. See Bearden v. Georgia , 461 U.S. 660, 674, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). Additionally, Blue has not argued a hearing regarding his ability to pay was necessary to determine the manner of payment pursuant to N.D.C.C. § 12.1-32-08(1). Consideration of a defendant's ability to pay may be useful for determining the conditions of payment, not the amount of the restitution, as long as those conditions are consistent with the mandate provided by N.D. Const. art. I, § 25 (1)(n) that the restitution be "timely."
[¶45] The majority opinion concludes that the constitutional question is not ripe. I disagree. The issue was raised by Blue and answered by the district court. A remand is a superfluous proceeding because if Blue is determined to have the ability to pay restitution, restitution will be set as has already been done and required by N.D. Const. art. I, § 25 (1)(n); if he is determined not to have the ability to pay, the district court will do as it has already done and set the restitution consistent with the constitution. The end result will not change under any circumstances.
[¶46] The sentence imposed by the district court did not violate the Eighth Amendment's requirement of proportionality, and the district court was correct in concluding N.D. Const. art. I, § 25 (1)(n) eliminates the statutory requirement to consider the defendant's ability to pay in determining the amount of restitution. I would affirm the judgment.
[¶47] Jon J. Jensen
Jerod E. Tufte