[File No. 6453.]

STATE OF NORTH DAKOTA ON THE RELATION OF
JAMES E. COX, Relator, v. JOHN GRAY, State Treasurer
of the State of North Dakota, Respondent.

(271 N. W. 133.)

Opinion filed January 6, 1937.

*Francis Murphy,* for petitioner and relator.

*P. O. Sathre,* Attorney General, and *T. A. Thompson,* Assistant
Attorney General, for respondent.

*Hyland & Foster,* amicus curiæ.

BURKE, Ch. J.   This is an original proceeding brought by James
E. Cox, a citizen, resident, elector, and taxpayer of the state of North
Dakota, in the name of the state of North Dakota, by and with the
written consent of the Attorney General.

The proceeding is to determine the validity of an initiated meas-
ure or law relating to the licensing and sale of alcoholic beverages sub-

mitted, under § 25 of article 3 of the Constitution, at the general election on the 3 day of November 1936.

It is claimed that there was not a substantial compliance with the provision of said § 25 which provides that "the secretary of state shall cause to be printed and mailed to each elector a publicity pamphlet, containing a copy of each measure together with its ballot title to be submitted at any election," and that said section 25 of the Constitution specifically provides that "this section shall be self-executing and all of its provisions shall be treated as mandatory;" that the secretary of state did not, in fact, cause to be printed and mailed to each elector a publicity pamphlet as required by the said constitutional provision and did not substantially comply therewith and did in fact cause to be printed only 186,000 of said publicity pamphlets containing the copy of such measure together with its ballot title and did in fact only mail 185,284 of such publicity pamphlets within the state.

Attached to the petition is a return of the State Canvassing Board showing that 147,330 votes were cast for the measure and 128,064 votes were cast against the measure.

The answer alleges that the secretary of state did substantially and wholly comply with the provisions of said section 25 of article 3 of the Constitution relating to the submission to the electors at the polls of initiated and referred measures; that in February, 1936, he directed all county auditors within the state to supply his office with the names of all voters within the county; that the county auditors did send to the office of the secretary of state the names and addresses of all known voters as required by law; that the secretary of state caused the initiated measure aforesaid to be printed in pamphlet form and did mail a copy of said publicity pamphlet to all voters in the state of North Dakota so far as the names and addresses were supplied to the secretary of state and were known to him; and that the said secretary of state did mail out to the voters 185,651 publicity pamphlets; that he also caused said initiated measure to be published verbatim in each and every official newspaper within the state.

To the answer is attached the affidavit of G. A. Gilbertson, deputy secretary of state, who states specifically, in such affidavit, that everything was done by the secretary's office that the law requires to be done,

150

and that such publicity pamphlet containing said measure was mailed to every known voter within the state of North Dakota.

Said § 25 of the Constitution is mandatory. Preckel v. Byrne, 62 N. D. 356, 243 N. W. 823; Schumacher v. Byrne, 61 N. D. 220, 237 N. W. 741.

The constitutional provision requiring the distribution of pamphlets can never literally be complied with. The number of voters in the state is constantly changing. Many people are leaving the state permanently and many are coming into the state to make their permanent homes. A great many come of age during every biennial period between elections.

This amendment to the Constitution was adopted at the general election in 1918 and in 1920 the voting population of the state was practically doubled by the nineteenth amendment to the Constitution of the United States extending the right of suffrage to women.

Section 25 of the Constitution does require the secretary of state to mail to each elector a publicity pamphlet containing a copy of each measure together with its ballot title to be submitted at any election; but it does not provide any machinery, method, or means of securing the names and addresses of the electors. It leaves the method or means of securing the names and post office addresses of the electors to existing legislation, and to legislation thereafter enacted in accordance with that provision of said § 25 which reads as follows: "In submitting measures to the electors, the secretary of state and all other officials shall be guided by the election laws until additional legislation shall be provided." In other words, in the submission of any measure the secretary of state and all other officials must be guided by existing statutory election laws, and if the secretary of state and all other officials follow the existing statutory law relating to the submission of initiated and referred measures there is a substantial compliance with the constitutional mandate.

The only legislation provided for obtaining the names and post office addresses of all voters is § 927, Compiled Laws 1913. It is a part of the primary election law. Under this section it is the duty of the county auditors to obtain the post office addresses of all voters in their respective counties which shall be taken from the registration list in case of party registration. In case of no party registration

such addresses shall be procured from the personal property tax books of that year and other authentic source, and on or before the thirtieth day preceding the nominating election, mail to the secretary of state the names, post office addresses, and party registration of every such person and at least twenty days before the regular biennial primary nominating election, the secretary of state shall forward by mail to every such person a copy of the pamphlet containing the names and statements herein provided for.

Clearly this relates to the primary election; but so far as the secretary was able he literally complied with this law. He wrote to each county auditor in February, 1936, before the primary election, for the names and addresses of the voters in each county, as the county auditors cannot be required to furnish this information after the primary election, and the list of voters and addresses so furnished were used by the secretary in mailing the pamphlet to the electors before the general election.

The only law relating to the publication of the publicity pamphlet enacted since the adoption of § 25 of the Constitution is § 927a1, 1925 Supplement to the 1913 Compiled Laws, which, in substance, requires the secretary to publish the pamphlet only when there is to be submitted an initiated or referred law or proposed amendment to the Constitution of the state of North Dakota; but this law does not provide any method or means of securing the names and post office addresses of the electors.

Section 964, Compiled Laws 1913, requires each county auditor to send to the inspector of each precinct five copies of the official ballot printed upon tinted paper and said inspector shall post the same in five public places in his precinct, one of such copies to be posted at the polling place therein. It is conceded that the measure was printed upon an official sample ballot and posted in five public places in each precinct and one at each polling place five days before the election.

Section 966, Compiled Laws 1913, requires each county auditor to cause to be printed on cards in large type full instructions to the electors as to the manner of obtaining and preparing ballots and shall furnish ten such cards to the judges of election in each precinct and the judges of election at the time of the opening of the polls are required to post at least one of such cards in each booth or compartment

provided for the preparation of ballots and at least three of such cards in and about the polling place. There shall also be posted in each booth or compartment one of the official ballots without the official stamp hereinbefore provided for, and not less than three of such ballots shall be posted in other places in and about the polling place upon the morning of the election. It is not claimed that this was not done.

Section 922, Compiled Laws 1913, as amended by chapter 136 of the Laws of 1935, requires the auditors to mail to each inspector of election five copies of the notice of election and each inspector shall at the same time that he posts the sample ballots and election instructions post said notice in five conspicuous places in his election precinct, which notice shall designate the location of the polling place in his precinct. It is not claimed that this was not done.

Section 959, Compiled Laws 1913, as amended by section 959, 1925 Supplement to the 1913 Compiled Laws provides that "a constitutional amendment, initiated or referred measure, or other question shall be stated fully and fairly on such ballot, and the words, 'yes' and 'no' shall be printed on the ballot at the close of the statement of the question in separate lines with a square formed of black lines after each in which the voter may indicate by cross or other mark how he desires to vote on the question." It is not contended that such ballot was not prepared and submitted to the voters in accordance with the existing legislation.

Section 979, Compiled Laws 1913, is as follows: "Whenever a proposed constitutional amendment or other question is to be submitted to the people of the state for popular vote the secretary of state shall, not less than thirty days before election, certify the same to the auditor of each county in the state and the auditor of each county shall include the same in the publication provided for in § 975. Questions to be submitted to the people of the county shall be advertised as provided for nominees for office in such section," that is, at least ten days before any election the county auditor of each county shall cause to be published in one or more newspapers within the county such constitutional amendment or measure and such publication of such amendment or measure shall be made daily until the election in counties where daily newspapers are published; but if there is no daily newspaper within the county two publications in each news-

paper will be sufficient; and if there is no newspaper published in any county, written or printed notices shall be posted in at least three public places in each precinct. It is not contended that a ballot containing the measure of law was not certified to the county auditors and that the said measure or law was not published or posted as provided by law.

Sections 981 and 982, Compiled Laws 1913, provides that the notice of election must be published in a newspaper designated by the board of county commissioners for the publication of their official proceedings at least once in each week for four consecutive weeks. It is not claimed that this was not done.

There was a literal compliance with existing laws in securing the names and post office addresses of the electors for the publicity pamphlet. There was a literal compliance with the publication of the measure upon the sample ballot and the posting of such ballot in conspicuous places in each precinct. There was a literal compliance with the law in the publication of the measure and a literal compliance in the publication of the measure upon the separate official ballot that was handed to each voter at the polls. In fact, there was a literal compliance with all the existing laws in relation to the submission of initiated legislation.

The vote upon the measure indicates that it had wide publicity before the election. There were more votes for and against the measure than any other measure ever submitted to the people. It received more votes for and against than all the votes cast for any one office except the office of Governor, for which office there were five contestants and a very spirited contest. For the five contestants for Governor there were 276,813 votes cast, and for and against the initiated measure there were 275,394 votes cast. There was also a very spirited contest for the office of President and for the six contestants for the office of President there were 273,715 votes cast, 1,678 votes less cast for President than were cast for and against the measure.

Since, in submitting an initiated measure to the electors, section 25 of the Constitution requires the secretary of state and all election officials to be guided by the election laws until additional legislation shall be provided, and it is not disputed that the secretary of state and

the election officials, in submitting the said measure, were guided by the election laws, it follows that there was a substantial compliance with the Constitution and the writ is denied.

CHRISTIANSON, Ch. J., and BURR, MORRIS and NUESSLE, JJ., concur.