2010 ND 174

**Eric M. THOMPSON, as Chairman of the Sponsoring Committee a/k/a North Dakotans for Lower Prescription Drug Prices, Petitioner**

v.

**Alvin A. (Al) JAEGER, Secretary of State of the State of North Dakota, Respondent.**

No. 20100272.

Supreme Court of North Dakota.

Sept. 7, 2010.

Daniel M. Traynor (argued), Devils Lake, N.D., and Richard Westfall (on brief) and Ryan R. Call (on brief), Hale

Westfall LLP, Denver, CO, pro hac vice, for petitioner.

Wayne K. Stenehjem (argued), Attorney General, Office of Attorney General, Bismarck, N.D., and Douglas Alan Bahr (appeared), Solicitor General, Office of Attorney General, Bismarck, N.D. for respondent.

SANDSTROM, Justice.

[¶ 1] The right to initiate and refer laws is part of the fabric of our liberty as North Dakotans. The people of North Dakota—through the state constitution—have reserved to themselves this check on the legislative process. But the people of North Dakota—through the state constitution—have also specified mandatory requirements for the exercise of this right to initiate and refer laws.

[¶ 2] Eric M. Thompson, as Chairman of the Sponsoring Committee of North Dakotans for Lower Prescription Drug Prices, asks this Court to order Secretary of State Alvin Jaeger to place an initiated measure on the November 2, 2010, general election ballot. The plain language of N.D. Const. art. III as enacted by the people requires petitions for initiated measures, including petitions circulated for signatures, to contain the names and addresses of the sponsors. Because the Sponsoring Committee failed to comply with the mandatory constitutional requirement that circulated petitions contain the sponsors' names and addresses, the Secretary of State correctly determined that the petitions submitted to him in this case were insufficient. We deny Thompson's request to direct the Secretary of State to place the initiated measure on the ballot for the November 2, 2010, general election.

I

[¶ 3] In October 2009, the Sponsoring Committee submitted a petition to the Secretary of State, under N.D. Const. art. III, for an initiated measure to amend N.D.C.C. § 43–15–35 to remove certain statutory provisions regarding corporate ownership and operation of a pharmacy in North Dakota. The petition submitted to the Secretary of State included a page listing the names and addresses of the twenty-five sponsors of the initiated measure. Attorney General Wayne Stenehjem approved a statement drafted by the Secretary of State summarizing the initiated measure for inclusion within the petition, and the Sponsoring Committee inserted the statement into the appropriate section of the petition and resubmitted the petition to the Secretary of State. The parties do not dispute the resubmitted petition also included a correction to the page listing the sponsors' names and addresses. The Secretary of State approved the petition for printing and for circulation for signatures on October 20, 2009, and he informed Thompson the minimum number of qualified elector signatures necessary to place the initiated measure on the ballot was 12,844.

[¶ 4] On August 4, 2010, the Sponsoring Committee submitted 526 petitions containing nearly 14,000 signatures to the Secretary of State. According to a representative for North Dakotans for Lower Drug Prices, there were "at least 12,905 valid signatures on the petitions." On August 5, 2010, the Secretary of State decided the 526 petitions that had been circulated for signatures and submitted to him were insufficient to place the initiated measure on the November 2, 2010, general election ballot, because those circulated petitions did not contain the first page of the approved petition listing the names and addresses of the twenty-five sponsors. The Sponsoring Committee refiled the page containing the names and addresses of the twenty-five sponsors from the initial

petition submitted to the Secretary of State and asked him to approve the initiated measure for the November 2, 2010, general election ballot. The Secretary of State again decided the 526 petitions were insufficient to place the initiated measure on the general election ballot, because those petitions did not include the names and addresses of the twenty-five sponsors and were not circulated for signatures in their entirety.

[¶ 5] Thompson petitioned this Court to review the Secretary of State's decision. We have jurisdiction to review the Secretary of State's decision under N.D. Const. art. III, §§ 6 and 7. *See Municipal Servs. Corp. v. Kusler*, 490 N.W.2d 700, 701–02 (N.D.1992).

## II

[¶ 6] Thompson argues the plain language of N.D. Const. art. III does not require petitions circulated for signatures to include the cover page with the sponsors' names and addresses. Thompson argues the Secretary of State was wrong in interpreting the state constitutional provisions and a related statutory provision to mean that every copy of a petition circulated for signatures must be accompanied by a sponsor page listing the names and addresses of the twenty-five sponsors. Thompson argues N.D. Const. art. III, § 2, "speaks only to the Secretary's approval, not to the form in which the petition must be circulated." Thompson argues that provision must be read in conjunction with N.D. Const. art. III, § 3, to provide that petitions circulated for signatures need not be accompanied by a sponsor page because the circulated petitions "shall become part of the original petition when filed" and the original sponsor page suffices for all the circulated petitions. Thompson also argues, to the extent N.D.C.C. § 16.1–01–09(2) requires

circulated petitions be accompanied by a cover page listing the sponsors' names and addresses, that statute imposes a requirement not contained in N.D. Const. art. III and violates the constitutional principle that "[l]aws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair" the initiative process under N.D. Const. art III, § 1.

[¶ 7] "Principles of construction applicable to statutes are generally available to construction of the Constitution." *McCarney v. Meier*, 286 N.W.2d 780, 783 (N.D.1979). In *Kelsh v. Jaeger*, 2002 ND 53, ¶ 7, 641 N.W.2d 100, we outlined several principles for construing constitutional provisions:

> When interpreting the state constitution, our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement. *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 8, 601 N.W.2d 247. The intent and purpose of a constitutional provision is to be determined, if possible, from the language itself. *State ex rel. Heitkamp v. Hagerty*, 1998 ND 122, ¶ 13, 580 N.W.2d 139. We give words in a constitutional provision their plain, ordinary, and commonly understood meaning. *Tormaschy v. Hjelle*, 210 N.W.2d 100, 102 (N.D.1973). When interpreting constitutional provisions, we apply general principles of statutory construction. *Hagerty*, at ¶ 13. We must give effect and meaning to every provision and reconcile, if possible, apparently inconsistent provisions. *State ex rel. Sanstead v. Freed*, 251 N.W.2d 898, 908 (N.D. 1977). We presume the people do not intend absurd or ludicrous results in adopting constitutional provisions, and we therefore construe such provisions to avoid those results. *North Dakota*

*Comm'n on Med. Competency v. Racek,* 527 N.W.2d 262, 266 (N.D.1995).

Thompson, in essence, argues the term "petition" in section 2 has a different meaning than "petition" in section 3. But this Court has recognized a word or a phrase repeated in a statute is given the same meaning throughout the statute. *State v. E.W. Wylie Co.,* 79 N.D. 471, 481, 58 N.W.2d 76, 82 (1953). *See generally* 82 C.J.S., *Statutes* § 388 (2009) ("Courts ordinarily presume, in the absence of evidence to the contrary, that identical words used in different parts of the same statute are intended to have the same meaning throughout the act.").

[¶ 8] Article III, N.D. Const., deals with "powers reserved to the people" and delineates those powers in § 1:

> While the legislative power of this state shall be vested in a legislative assembly consisting of a senate and a house of representatives, the people reserve the power to propose and enact laws by the initiative, including the call for a constitutional convention; to approve or reject legislative Acts, or parts thereof, by the referendum; to propose and adopt constitutional amendments by the initiative; and to recall certain elected officials. This article is self-executing and *all of its provisions are mandatory.* Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers.

(Emphasis added.)

[¶ 9] Article III, § 2, N.D. Const., provides, in relevant part:

> A petition to initiate or to refer a measure must be presented to the secretary of state for approval as to form. A request for approval must be presented over the names and signatures of twenty-five or more electors as sponsors, one of whom must be designated as chairman of the sponsoring committee. The secretary of state shall approve the petition for circulation *if it is in proper form and contains the names and addresses of the sponsors and the full text of the measure.*

(Emphasis added.)

[¶ 10] Article III, § 3, N.D. Const., provides:

> The petition shall be circulated only by electors. They shall swear thereon that the electors who have signed the petition did so in their presence. Each elector signing a petition shall also write in the date of signing and his post-office address. No law shall be enacted limiting the number of copies of a petition. The copies shall become part of the original petition when filed.

Other mandatory provisions of that self-executing article identify the number of electors necessary to sign the petition, the time for submitting the petition to the Secretary of State, the Secretary of State's obligation to pass on the sufficiency of the petition, this Court's review of the Secretary of State's decision, and the consequences of the voters' approval. *See* N.D. Const. art. III, §§ 4–8.

[¶ 11] The people's power to initiate or refer legislation is a fundamental right, and the relevant constitutional provisions must be liberally construed in favor of the people's exercise of that right. *Husebye v. Jaeger,* 534 N.W.2d 811, 814 (N.D.1995). We also recognize, however, that the people have approved "self-executing" and "mandatory" provisions in N.D. Const. art. III to define how the "powers reserved to the people" may be exercised. N.D. Const. art III, § 1.

[¶ 12] Thompson's argument essentially seeks to separate the sponsors' page from the petition for purposes of circulating the petition. The plain language of N.D. Const. art. III and our rules

of construction, however, do not contemplate separate documents for approval and for circulation of the petition. Rather, the plain language of N.D. Const. art. III, § 2, says, "The secretary of state shall approve the petition for circulation if it is in proper form and contains the names and addresses of the sponsors and the full text of the measure." The phrases in that provision are separated by the term "and," which is conjunctive in nature and ordinarily means in addition to. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 20, 590 N.W.2d 454. The structure of that sentence reflects the people intended the sponsors' names and addresses, like the full text of the measure, to be important to the initiative process. The plain and unambiguous language of N.D. Const. art. III, § 2, reflects the people defined the petition "approv[ed] . . . for circulation . . . [to] contain[ ] the names and addresses of the sponsors," and a document that does not "contain" those components is not the "petition" for purposes of N.D. Const. art. III, including for purposes of circulation for signatures. The plain language of N.D. Const. art. III, § 3, refers to "[t]he petition" and does not differentiate between a petition approved by the Secretary of State and a petition circulated for signatures by electors. The language in the last sentence of N.D. Const. art. III, § 3, that "copies shall become part of the original petition when filed" does not support a contrary interpretation. That plain language simply means the people intended that copies of the "petition," as that word is used in N.D. Const. art. III, may be circulated for signatures and shall become part of the original petition when filed. In other words, it is not necessary to circulate an original petition for signatures. Rather, copies of the petition may be circulated for signatures and the copies are considered part of the original petition when filed.

[¶ 13] Under our rules of construction and giving due regard to the fundamental nature of the initiative process, we construe the provisions of N.D. Const. art. III together to give meaning to each word and phrase and to give the term "petition" the same meaning throughout that article. We reject Thompson's attempt to parse the constitutional provisions for a petition into separate documents—a petition approved by the Secretary of State and a petition circulated to the electors. A "petition" under the plain and unambiguous language of the self-executing and mandatory provisions of N.D. Const. art. III must contain the sponsors' names and addresses, which, we note, is consistent with the enabling legislation in N.D.C.C. § 16.1–01–09(2).

### III

[¶ 14] Relying primarily on *McCarney v. Meier*, 286 N.W.2d 780 (N.D. 1979), Thompson argues that even if this Court construes circulated petitions to include the sponsors' names and addresses, the initiated measure in this case should be placed on the ballot because the Sponsoring Committee substantially complied in good faith with all the statutory and constitutional requirements for placing the measure on the ballot and it would be inequitable not to place the measure on the ballot. Thompson argues the Secretary of State's "refusal to place the proposed measure on the ballot based on a technical statutory deficiency, when the Sponsors had in good faith complied with all material constitutional and statutory provisions, exalts form over substance and defeats the spirit and intent" of N.D. Const. art. III. He argues a technical deficiency in the form of the circulated petition cannot defeat the fundamental right to initiate law, and he claims this Court's "substantial compliance" standard is easily met in this case.

[¶ 15] In *McCarney*, 286 N.W.2d at 785–87, this Court considered an issue involving a referral petition containing incomplete addresses for the electors signing the petition. This Court discussed the purpose of the constitutional provision requiring electors to include their post-office addresses when signing petitions and explained the purpose was not to make the signatures valid, but to aid the Secretary of State in contacting the signer to determine whether the signer was a qualified voter and had, in fact, signed the petition. *Id.* This Court held there was substantial compliance with the constitutional requirement for signing electors to identify their post-office addresses, because the electors whose signatures were rejected had attempted to comply with the constitutional provision in the manner suggested in a sample petition, the Secretary of State was able to contact the electors whose signatures had been rejected for incomplete addresses, the term "post-office address" was subject to multiple meanings at that time, and the case was not one in which a mandatory requirement was completely omitted. *Id.* This Court held the signers' designation of the city and state on the petition was sufficient compliance with the constitutional requirement for signers to list a post-office address. *Id.* at 787. *See also State ex rel. Cox v. Gray*, 67 N.D. 148, 150–54, 271 N.W. 133, 134–37 (1937) (Secretary of State substantially complied with constitutional requirement to mail publicity pamphlet to each elector in state when Secretary of State mailed pamphlet to every known voter; recognizing constitutional provision could never be literally complied with).

[¶ 16] *McCarney* does not control this case. In *McCarney*, 286 N.W.2d at 785–87, there was attempted compliance with the constitutional requirement for signing electors to provide their post-office addresses, but some of the addresses were incomplete. Here, there has been no compliance with the mandatory constitutional requirement that petitions, including circulated petitions, contain the sponsors' names and addresses. In *McCarney*, at 786, there was ambiguity regarding the term "post-office address," while in this case the mandatory and self-executing provisions of N.D. Const. art. III plainly and unambiguously define what the petition must contain.

[¶ 17] In *McCarney*, 286 N.W.2d at 786, the requirement for post-office addresses was to aid the Secretary of State in contacting the signers to determine whether they were qualified electors and had, in fact, signed the petition. The obvious purpose of the constitutional mandate that the petition contain the sponsors' names and addresses is to provide material information to potential signers when they contemplate signing the petition. The fact the complete petition, including the sponsors' page, may have been available on the Secretary of State's Internet website does not satisfy the constitutional requirement mandated by the people for the benefit of electors contemplating signing the circulated petitions. In different contexts, other courts have recognized the significant purpose of including the sponsors' names and addresses in a petition to provide important information to electors contemplating signing a petition. *See Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301, 308 (2003) ("sworn list of the sponsors and their street addresses allows the public to make an informed judgment whether to sign the petition"); *Hamilton Twp. Taxpayers' Ass'n v. Warwick*, 180 N.J.Super. 243, 434 A.2d 656, 658 (1981) (purpose of requirement is to inform voters solicited for signatures about who the petition sponsors are and where they live to guide voters whether to sign; prospective signers may draw on their own knowledge and

make inquiries concerning the sponsors' political affiliations, standing in the community, and reliability).

[¶ 18] We reject Thompson's argument that the omission in this case is a technical statutory deficiency. Rather, the deficiency pertains to information required by the constitution, which the people intended to be critical and appropriate for electors contemplating signing a petition. Here, rather than substantial compliance, there has been no compliance with the constitutional mandate that the petition, including every circulated petition, contain the sponsors' names and addresses.

[¶ 19] Under these circumstances, Thompson's reliance on *Haugland v. Meier*, 339 N.W.2d 100 (N.D.1983), to support an equitable argument to place the initiated measure on the ballot is also misplaced. In *Haugland*, at 106, extraneous information was included in a referral petition approved by the Secretary of State. This Court concluded a combination of countervailing circumstances produced a "close, complex question" constituting a form of excusable neglect and warranted application of principles of equity rather than a strict technical principle of law to sustain the Secretary of State's approval of the referral petition. *Id.* at 106–07. Those countervailing circumstances included the "apparent good faith" action by the sponsors of the referral, which may have been the result of erroneous impressions from previous petitions filed with the Secretary of State and from erroneous reliance on prior inapplicable case law, the lack of time to correct the referral petition, and a failure to challenge identical language in a prior lawsuit. *Id.* at 107.

[¶ 20] The inclusion of extraneous information in the petition in *Haugland* was significantly different from the omission of material information from the petition in this case. Although the power to initiate measures is of fundamental importance and the Sponsoring Committee has expended significant effort with no suggestion of fraud or bad faith in obtaining signatures in this case, application of *Haugland* to this case would eviscerate the mandatory constitutional requirement that the petition "contain[ ] the names and addresses of the sponsors."

[¶ 21] The complete absence of the sponsors' names and addresses on the circulated petitions is not substantial compliance with the constitutional requirements imposed by the people of North Dakota, and we reject Thompson's arguments that there has been substantial compliance with the constitutional requirement that the petition contain the sponsors' names and addresses, or that it would be inequitable not to place the measure on the ballot.

IV

[¶ 22] Relying on *Blocker Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912 (N.D.1984), Thompson also argues the Secretary of State is administratively estopped from refusing to place the measure on the ballot.

[¶ 23] *Conrad*, however, recognizes administrative estoppel "is a doctrine which should not be applied freely against the government." 354 N.W.2d at 923 (VandeWalle, Justice, concurring specially, in which two other justices joined). *See also Singha v. State Bd. of Med. Exam'rs*, 1998 ND 42, ¶ 34, 574 N.W.2d 838 ("[e]stoppel against an administrative agency is not freely applied"). *Conrad* recognized the elements of estoppel for the person being estopped include conduct which amounts to a false representation or concealment of material facts, an intention that the conduct will be acted on or will influence the other party, and knowledge of the real facts. 354 N.W.2d at 920.

[¶ 24]   Here, Thompson's estoppel argument involves statements by representatives in the Secretary of State's office regarding the Secretary of State's guidelines for petitions.   Thompson claims those guidelines provided inadequate guidance to the Sponsoring Committee and the minor technical deficiency in this case was largely the fault of the Secretary of State's office.   The Secretary of State's guidelines, however, explicitly state, "The names and addresses of the sponsoring committee must appear on the front page of the petition."   Nothing in this record suggests the Secretary of State or his office engaged in false representations or concealment of a material fact.   We reject Thompson's argument for estoppel against the Secretary of State.

V

[¶ 25]   Secretary of State Jaeger correctly decided the submitted petitions were insufficient.   We deny Thompson's request to direct the Secretary of State to place the initiated measure on the ballot at the November 2, 2010, general election.

[¶ 26] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ., and WILLIAM F. HODNY, S.J., concur.

[¶ 27] The Honorable WILLIAM F. HODNY, S.J., sitting in place of CAROL RONNING KAPSNER, J., disqualified.